UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA

**CARLA MATTHEWS** and
**LASERE REID-SMITH,** individually,
and on behalf of others similarly situated,

        Plaintiffs,

vs.

**CLOUD 10 CORP,** a Delaware corporation,

        Defendant.

Case No. 3:14-cv-00646

Hon. Frank D. Whitney

---

### PLAINTIFFS' PRE-DISCOVERY MOTION FOR CONDITIONAL CLASS CERTIFICATION AND COURT-SUPERVISED NOTICE TO POTENTIAL OPT-IN PLAINTIFFS PURSUANT TO 29 U.S.C. §216(b)

Plaintiffs, Carla Matthews and LaSere Reid-Smith, on behalf of themselves and all other similarly situated individuals, respectfully moves, pursuant to Section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), for entry of an order:

(1)     Conditionally certifying the proposed collective FLSA class;

(2)     Implementing a procedure whereby Court-approved Notice of Plaintiffs' FLSA claim is sent (via US Mail and e-mail) to:

> *All current and former hourly home-based customer service representatives who worked for Defendant at any time during the last three years*;[1] and

(3)     Requiring Defendant to identify all potential opt-in plaintiffs by providing a list in electronic and importable format, of all current and former hourly home-based customer service representatives who worked for Defendant at any time during the last three years.

---

[1] A proposed Notice is attached as *Exhibit A*. In addition to U.S. Mail and e-mail, Plaintiffs seek an Order requiring Defendant to hand out a copy of the Notice and opt-in form with every paycheck for one agreed payday.

This Motion is based on the pleadings, memorandums, and argument of Counsel.  The relief Plaintiffs seek is appropriate for the reasons discussed in the attached Memorandum of Law.

Dated:  December 11, 2014

/s/ Kevin J. Stoops
Kevin J. Stoops *(PHV)*
Jesse L. Young *(PHV)*
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
248-355-0300
kstoops@sommerspc.com
jyoung@sommerspc.com

Timothy J. Becker *(Pending Pro Hac Admission)*
MN Bar No. 256663
Jacob R. Rusch *(Pending Pro Hac Admission)*
MN Bar No. 391892
JOHNSON BECKER, PLLC
33 South Sixth Street, Suite 4530
Minneapolis, Minnesota 55402
Telephone: (612) 436-1800
Facsimile: (612) 436-1801
tbecker@johnsonbecker.com
jrusch@johnsonbecker.com

*Trial Counsel for Plaintiff*

Edward B. Davis, NC Bar No. 27546
BELL DAVIS PITT, P.A.
227 W. Trade Street, Suite 2160
Charlotte, North Carolina 28202
ward.davis@belldavispitt.com
(704) 227-0129

*Local Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA

**CARLA MATTHEWS** and
**LASERE REID-SMITH,** individually,                    Case No. 3:14-cv-00646
and on behalf of others similarly situated,

                                                          Hon. Frank D. Whitney

              Plaintiffs,

vs.

**CLOUD 10 CORP,** a Delaware corporation,

              Defendant.

_____

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' PRE-DISCOVERY
MOTION FOR CONDITIONAL CLASS CERTIFICATION AND COURT-
SUPERVISED NOTICE TO POTENTIAL OPT-IN PLAINTIFFS
<u>PURSUANT TO 29 U.S.C. §216(b)</u>**

# TABLE OF CONTENTS

INDEX OF AUTHORITIES.................................................................................II

I.          BOTTOM LINE UPFRONT ................................................................ 1

II.        RELEVANT FACTS ......................................................................... 2

      A.     THE PARTIES.......................................................................... 2

    1.     Defendant................................................................................. 2
    2.     Plaintiffs................................................................................. 2

      B.     DEFENDANT FAILED TO PAY FOR PRELIMINARY, MID-SHIFT, LUNCH-BREAK AND POSTLIMINARY ACTIVITIES WHICH DIRECTLY BENEFITED DEFENDANTS AND WHICH WERE AN ESSENTIAL PART OF PLAINTIFFS' JOB RESPONSIBILITIES AS CUSTOMER SERVICE REPRESENTATIVES............................................................ 3

    1.     Preliminary activities. ............................................................. 4
    2.     Mid-shift EStart connectivity issues. ....................................... 5
    3.     Lunch-break activities............................................................. 6
    4.     Postliminary activities............................................................. 6

      C.     DEFENDANT'S FLSA VIOLATIONS ARE WIDESPREAD AND ONGOING ..................................................................... 7

IV.        LAW AND ARGUMENT .................................................................. 8

      A.     THE FLSA AUTHORIZES COLLECTIVE ACTIONS AND NOTICE TO SIMILARLY SITUATED EMPLOYEES....................................... 8

      B.     THE FOURTH CIRCUIT APPLIES A LENIENT STANDARD WHEN CONDITIONALLY CERTIFYING AN FLSA COLLECTIVE ACTION.................................................................... 10

    1.     Evidence Typically Accepted to Meet the "Similarly Situated" Test................... 11
    2.     Remedial Purpose of the FLSA ............................................... 12
    3.     The Purposes of § 216(b) Notice .......................................... 12

      C.     THIS COURT IS AUTHORIZED TO ISSUE NOTICE TO POTENTIAL OPT-IN PLAINTIFFS AND SHOULD DO SO IMMEDIATELY ...................................................................... 13

      D.     PLAINTIFFS ARE ENTITLED TO OBTAIN A LIST OF ALL POTENTIAL CLASS MEMBERS.......................................................... 14

      E.     THE COURT SHOULD GRANT A NINETY (90) DAY OPT-IN PERIOD FOR ADDITIONAL PLAINTIFFS TO JOIN THIS LITIGATION................................................................................ 14

IV.        CONCLUSION.................................................................................. 15

# TABLE OF AUTHORITIES

**Federal Cases**

*Braunstein v. E. Photographic Labs.*, 600 F.2d 335 (2d Cir. 1978) ............................................. 11

*Choimbol v. Fairfield Resorts, Inc.*, 475 F. Supp. 2d 557 (E.D. Va. 2006) ................................. 14

*Dacar v. Saybolt LP*, 2010 WL 5634378 (E.D.N.C. Aug. 23, 2010) .......................................... 12

*De Jesus De Luna-Guerrero v. N.C. Grower's Ass'n*, 338 F. Supp. 2d 649 (E.D.N.C. 2004) ........................................................................................................................................ 12, 13

*Diaz v. Quality Crab Co.*, 2011 WL 4498941 (E.D.N.C. Aug. 12, 2011) ................................. 12

*Fisher v. Mich. Bell Tel. Co.*, 665 F. Supp. 2d 819 (E.D. Mich. 2009) ....................................... 11

*Garcia v. Frog Island Seafood, Inc.*, 644 F. Supp. 2d 696 (E.D.N.C. 2009) .............................. 12

*Gaxiola v. Williams Seafood of Arapahoe, Inc.*, 776 F. Supp. 2d 117 (E.D.N.C. 2011) ............. 12

*Gregory v. Belfor USA Group, Inc.*, 2012 WL 3062696 (July 26, 2012) .............................. 13, 14

*Harris v. Smithfield Packing Co.*, 2011 WL 4443024 (E.D.N.C. Sept. 23, 2011) ...................... 12

*Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208 (11th Cir. 2001) ........................................... 14

*Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249 (S.D.N.Y. 1997) .................................................... 11

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989) ................................................................................................................................ 11, 14, 15

*Horne v. Smithfield Packing Co.*, 2011 WL 4443034 (E.D.N.C. Sept. 23, 2011) ...................... 12

*Jackson v. N.Y. Tel. Co.*, 163 F.R.D. 429 (S.D.N.Y. 1995) ................................................. 11, 14

*Jimenez-Orozco v. Baker Roofing Co.*, 2007 WL 4568972 (E.D.N.C. Dec. 21, 2007) .............. 12

*Jirak v. Abbott Labs.*, 566 F. Supp. 2d 845 (N.D. Ill. 2008) ...................................................... 13

*Kinney Shoe Corp. v. Vorhes*, 564 F.2d 859 (9th Cir. 1977) ....................................................... 11

*Long v. CPI Sec. Sys.*, 292 F.R.D. 296 (W.D.N.C. 2013) ..................................................... 12, 13

*Martinez-Hernandez v. Butterball, L.L.C.*, 2008 WL 8658452 (E.D.N.C. Nov. 14, 2008) ....................................................................................................................................... 12

*McLaurin v. Prestage Foods, Inc.*, 271 F.R.D. 465 (E.D.N.C. 2010) ......................................... 12

*Mitchel v. Crosby Corp.*, 2012 WL 4005535 (Sept. 10, 2012) ................................................... 14

*Mitchell v. Smithfield Packing Co.*, 2011 WL 4442973 (E.D.N.C. Sept. 23, 2011) ................... 12

*Rehberg v. Flowers Foods, Inc.*, No. 3:12cv596, 2013 U.S. Dist. LEXIS 40337 (W.D.N.C. Mar. 22, 2013) ..................................................................................................... 12, 15

*Romero v. Mountaire Farms, Inc.*, 796 F. Supp. 2d 700 (E.D.N.C. 2011) ........................... 12, 13

*Scott v. Bimbo Bakeries, USA, Inc.*, 2012 WL 645905 (E.D. Pa. Feb. 29, 2012) ....................... 13

*Westfall v. Kendle Int'l, CPU, L.L.C.*, 2007 WL 486606 (N.D.W. Va. Feb. 15, 2007) ............. 13

**Federal Statutes**

29 U.S.C. § 16(b) (2006) ........................................................................................ 1

29 U.S.C. § 207(a) (2006) ...................................................................................... 10

29 U.S.C. § 211(c) (2006) ...................................................................................... 10

29 U.S.C. § 216(b) (2006) ......................................................... 1, 3, 4, 5, 6, 10, 17

29 U.S.C. § 255(a) (2006) ...................................................................................... 15

29 U.S.C. § 256(b) (2006) ...................................................................................... 15

**Other**

29 C.F.R. pt. 16 (2013) ......................................................................................... 17

29 C.F.R. pt. 216 (2013) .......................................................................... 10, 11, 14, 15

29 C.F.R. § 785.19 (2013) ..................................................................................... 8, 9

## BOTTOM LINE UPFRONT

Plaintiffs, Carla Matthews and LaSere Reid-Smith (hereinafter "Plaintiffs"), individually and on behalf of all others similarly situated, respectfully request that the Court:

(1)    certify a collective action for unpaid overtime wages under § 216(b) of the FLSA;

(2)    approve the court-supervised notice (attached as *Exhibit A*) to the collective action Class members; and

(3)    order Defendant, Cloud 10 Corp ("Defendant") to identify potential opt-in plaintiffs by providing a list in electronic and importable format, of all current and former hourly customer service representatives who worked for Defendant at any time during the last three years.

Plaintiffs' proposed FLSA class is defined as:

*All current and former hourly home-based customer service representatives who worked for Defendant at any time during the last three years.*

As identified below, the relief Plaintiffs seek by way of this Motion must be granted because:

(1)    Plaintiffs have identified that Defendant maintains and common scheme and policy of failing to pay wages for compensable pre-shift, mid-shift, lunch break and post-shift activities;

(2)    The Fourth Circuit applies a lenient standard when conditionally certifying an FSLA collective action;

(3)    Plaintiffs have identified the existence of similarly situated employees who were subjected the same practices, worked off-the-clock and overtime for which they were not paid, and would likely participate in a lawsuit to recover unpaid wages; and

(4)    Without the requested court-ordered notice, many putative plaintiffs will never learn about this case and their right to participate; as a result, their viable claims would silently slip away under the FLSA statute of limitations.

1

# I. RELEVANT FACTS

## A. THE PARTIES.

### 1. Defendant.

Defendant Cloud 10 Corp is a Delaware corporation that is licensed to do business in North Carolina. Defendant employs home-based customer service representatives in North Carolina. (Dkt. 1 at ¶ 32).

Defendant is a subsidiary of Transcom Worldwide North America (hereinafter referred to as "Transcom") and maintains its principal place of business in Denver, Colorado. *See,* https://www.facebook.com/pages/Cloud-10-Corp-a-Transcom-Company/119518334767217. "Transcom is a global customer experience specialist, providing customer care, sales, technical support and credit management services through our extensive network of contact centers and work-at-home agents." *Id.* Transcom maintains "29,000 customer experience specialists at 57 contact centers across 24 countries, delivering services in 33 languages to over 400 international brands in various vertical industries." *See,* http://www.transcom.com/sv/About-Transcom/Who-we-are.

### 2. Plaintiffs.

Named Plaintiff, Carla Matthews, is a resident of Candler, North Carolina who served as one of Defendant's hourly home-based customer service representatives February 2013 to May 2013. (*Id.* at ¶ 30). Plaintiff Matthews was compensated at a rate of $9.50 per hour. (*Id.* at ¶ 33). Plaintiff Matthews' signed declaration is attached hereto as *Exhibit B*.

Named Plaintiff, LaSere Reid-Smith, is a resident of Albany, Georgia who served as one of Defendant's hourly home-based customer service representatives February 2013 to June 2013. (Dkt. 1 at ¶ 31). Plaintiff Reid-Smith was compensated at a rate of $9.50 per hour. (*Id.* at ¶ 34). Plaintiff Reid-Smith's signed declaration is attached hereto as *Exhibit C*.

2

**B. DEFENDANT FAILED TO PAY FOR PRELIMINARY, MID-SHIFT, LUNCH-BREAK AND POSTLIMINARY ACTIVITIES WHICH DIRECTLY BENEFITED DEFENDANTS AND WHICH WERE AN ESSENTIAL PART OF PLAINTIFFS' JOB RESPONSIBILITIES AS CUSTOMER SERVICE REPRESENTATIVES.**

Defendant requires its home-based customer service representatives to work a set schedule. However, Defendant only compensates its home-based customer service representatives for the time they spend on the telephone and available to accept calls. This policy resulted in Defendant's home-based customer service representatives not being paid for all time worked and for all of their overtime in violation of the FLSA. (*Id.* at ¶ 6).

Defendant's home-based customer service representatives use multiple computer programs, software programs, servers and applications, in the course of performing their responsibilities. These programs, servers and applications, are an integral and important part of their work as they cannot perform their job without them. (*Id.* at ¶ 7). Defendant's home-based customer service representatives perform the same basic job duties and are required to use the same computer programs, software programs, servers and applications. (*Id.* at ¶ 8). Defendant's home-based customer service representative jobs are non-exempt positions that typically pay a few dollars more than the federally mandated minimum wage. (*Id.* at ¶ 9).

The U.S. Department of Labor recognizes that call center jobs, like those held by Defendant's home-based customer service representatives, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center employees to some of the abuses which are prevalent in the industry. One of those abuses, which is occurring in this case, is an employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." (*Id.* at ¶ 10). The Department of Labor's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre-shift and post-shift activities. Additionally, the FLSA requires that "[a] daily or weekly record of all hours

3

worked, including time spent in pre-shift and post-shift job-related activities must be kept." (*Id.* at ¶ 19).

Defendant knew or could have easily determined how long it took for its home-based customer service representatives to complete the preliminary start-up and log-in process and Defendant could have properly compensated Plaintiffs and the Class for the preliminary start-up and log-in work they performed, but did not. Defendant also knew or could have easily determined or tracked how long it took for each home-based customer service representatives to complete the postliminary computer log-out process, and Defendant could have paid Plaintiffs and the Class for the postliminary work they performed, but did not. Further, Defendant knew or could have easily determined the average daily time that its home-based customer service representatives are disconnected from Defendant's programs, including "Avaya," and could have paid the employees for this time, and could have provided Plaintiffs and the Class with their full and uninterrupted 30-minute lunch breaks, but did not. On behalf of themselves and hundreds or thousands of others similarly situated customer service representatives, Plaintiffs seek to recover the full measure of back-pay and damages. (*Id.* at ¶ 21).

### 1.    <u>Preliminary activities.</u>

In order to perform her job, Plaintiffs were required to start-up and log-in to various, secure computer programs, software programs, servers and applications, in order to access information and software. The start-up and log-in process took substantial time on a daily basis with said time ranging from 15 to 25 minutes per day. (*Id.* at ¶ 36; *see also Exhibits B* and *C* at ¶ 6). Plaintiffs were not actually "clocked in" for their shifts until *after* the computer start-up and log-in process was complete and she logged into the applicable programs, software, servers and applications, meaning that Plaintiffs and all other Class members worked at least 25 to 30 minutes each per shift that they were never compensated for. This off-the-clock time Plaintiff

spent starting up and logging into each session directly benefitted Defendant and this process was an essential part of Plaintiff's job responsibilities as a home-based customer service representatives. (Dkt. 1 at ¶ 37; *Exhibits B* and *C* at ¶ 6).

More specifically, prior to each shift, and before Plaintiffs were able to "clock-in," Plaintiffs were required to complete various start-up/log-in functions so they could access and utilize Defendant's computer systems, servers, and software programs. This process included:

- Shutting down and re-starting their computer;

- Opening and connecting to the following programs (in chronological order):

  - Moka 5;
  - Citrix;
  - Portico;
  - Vision;
  - Einstein;
  - Grandslam;
  - Casper;
  - TSG;
  - Matrix;
  - EROne;
  - Ntalk;
  - Comcast.net; and

- Logging into Avaya at which time Plaintiffs would be logged into Defendant's timekeeping program (i.e. "clocked-in").

(*Exhibits B* and *C* at ¶ 6).

### 2.   <u>Mid-shift EStart connectivity issues.</u>

At periodic times throughout each shift, Plaintiffs were disconnected from Defendant's programs, including "Avaya." During the disconnection period, Plaintiffs were unable to take calls from Defendant's customers. It usually took Plaintiffs no less than 3 to 4 minutes to log back into these programs each time they were disconnected. Defendant did not pay Plaintiffs for the time they were disconnected from software programs mid-shift. (Dkt. 1 at ¶ 38; *Exhibits B* and *C* at ¶ 7).

### 3. **Lunch-break activities.**

Defendant does not provide its home-based customer service representatives with a legitimately unpaid bona fide meal period. Instead, Defendant requires its home-based customer service representatives to have their computer and phone systems up and running *before* the end of their 30-minute lunch break so they can immediately make/take calls; thus, the home-based customer service representatives are required to return to their desks during their lunch breaks in order to reopen Defendant's "Vision" and "Avaya" programs (a process that takes 2 to 3 minutes) and, if these programs were not reopened within the requisite time Plaintiffs would be required to repeat the exact same log-in process they undertook at the beginning of their shift. (Dkt. 1 at ¶ 39; *Exhibits B* and *C* at ¶ 8).

29 CFR 785.19 states:

> (a) Bona fide meal periods. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be ***completely relieved*** from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

### 4. **Postliminary activities.**

Finally, Plaintiffs were required to log-out at the end of each shift. The log-out process took substantial time on a daily basis with said time ranging from 5 minutes to 10 minutes per day. (Dkt. 1 at ¶ 40). Defendant required Plaintiffs to "clock out" *prior* to them logging out of the computer programs, software programs, servers and applications, meaning that Plaintiffs and all other Class members worked at least 5-10 minutes each per shift that they were never compensated for. This off-the-clock time Plaintiffs spent logging out of each session directly benefitted Defendant and this process was an essential part of Plaintiffs' job responsibilities as

6

home-based customer service representatives. (*Id.* at ¶ 41). The log-out process that is required at the end of each shift includes:

- Logging out of Avaya at which time Plaintiffs would be logged out of Defendant's timekeeping program (i.e. "clocked-out").

- Disconnecting from the following programs (in chronological order):
  - Comcast.net;
  - Ntalk;
  - EROne;
  - Matrix;
  - TSG;
  - Casper;
  - Grandslam;
  - Einstein;
  - Vision;
  - Portico;
  - Citrix;
  - Moka 5; and

- Shutting down and re-starting Plaintiffs' computers; and

- Submitting a ticket if Plaintiffs experienced technical issues and/or needed to submit adjustments related to their daily adherence percentage.

(*Exhibit B* and *C* at ¶¶ 9).

## C.   DEFENDANT'S FLSA VIOLATIONS ARE WIDESPREAD AND ONGOING

Plaintiffs and the putative Class of employees all worked for Defendant and are/were compensated on an hourly basis. Plaintiffs and the putative Class of employees were subjected to the same policies and procedures regarding their preliminary, mid-shift, lunch-break and postliminary start-up/log-in and log-out time. (*See generally Exhibits B* and *C*). A review of the preliminary, mid-shift, lunch-break and postliminary time confirms Defendant refused or otherwise failed to pay their hourly home-based customer service representatives for all time worked and, where applicable, overtime wages at the rate of time-and-a-half for time worked in

7

excess of forty (40) hours per week.  Thus, Plaintiffs provides substantive, *prima facie* support for the FLSA violations alleged in the Complaint.

<h3 style="text-align:center">IV.    LAW AND ARGUMENT</h3>

**A.    THE FLSA AUTHORIZES COLLECTIVE ACTIONS AND NOTICE TO SIMILARLY SITUATED EMPLOYEES**

The FLSA provides that "no employer shall employ any of his employees . . . for a work week longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." *See* 29 U.S.C. § 207(a).  Compliance with this provision is obtained through the maintenance of *accurate* records of all hours worked by employees. 29 U.S.C. § 211(c).  An employer who violates this requirement can be sued by the affected employees collectively. 29 U.S.C. § 216(b).  Moreover, where the employer's violations are alleged to be widespread, the FLSA affirmatively grants an aggrieved employee the right to bring an action "for and on behalf of himself . . . and other employees similarly situated." *Id.*  However, an "opt in" action under § 216(b) of the FLSA prohibits any person from being a plaintiff in an FLSA action unless they file a written consent with the Court.  Actions pursued in such a representative capacity are referred to as "collective actions." *Id.*

This pre-discovery motion requests the circulation of a Notice of the pendency of this action to other persons pursuant to § 216(b) so they can receive notice of, and exercise, their "opt in" rights in this FLSA litigation.  Under the FLSA, until a person affirmatively "opts in" by filing a written consent with the Court, the statute of limitations on their FLSA claim continues to run.  Because FLSA plaintiffs make an affirmative and conscious choice to "opt in" and join the litigation—there are no "silent" FLSA participants whose interests need to be protected by the Court.

The FLSA is silent on how notification should be given to other similarly situated persons in § 216(b) collective actions. *Braunstein v. Eastern Photographic Laboratories, Inc.*, 600 F.2d 335, 336 (2nd Cir. 1978), was the most notable early Circuit Court decision approving a district court order directing written notice to similarly situated persons in a § 216(b) lawsuit. *Braunstein* was endorsed by *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989), overruling the 9th Circuit's contrary decision in *Kinney Shoe Corp. v. Vorhes*, 564 F.2d 859, 862 (9th Cir. 1977) (holding that notice of pendency could not be issued in § 216(b) actions).

In *Hoffman La-Roche, Inc.*, the United States Supreme Court held that courts have the discretion to implement the collective action procedure by facilitating the issuance of notice to potential class members. 493 U.S. 165, 173 (1989). Commenting favorably upon collective actions, the Supreme Court noted:

> A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity. These benefits, however, depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.

*Id*. at 170.

The lack of a class-wide tolling of the statute of limitations in FLSA cases should cause the Court to favor providing notice to other similarly situated persons of their "opt in" rights at the earliest stage of the litigation. *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 262 (S.D.N.Y. 1997). Failing to provide such prompt notice frustrates the FLSA's broad remedial purposes and its specific grant of collective action rights to employees. See *Fisher v. Michigan Bell Telephone Co.*, 665 F.Supp.2d 819, 828-29 (E.D. Mich. 2009); *Jackson v. New York Tel. Co.*, 163 F.R.D. 429, 431 (S.D.N.Y. 1995).

9

**B.      THE FOURTH CIRCUIT APPLIES A LENIENT STANDARD WHEN CONDITIONALLY CERTIFYING AN FLSA COLLECTIVE ACTION**

In recognition of the judicial efficiencies and cost-saving benefits of collective actions, courts in the Fourth Circuit follow a two-step approach when deciding whether the named plaintiffs are similarly situated for the purpose of certifying a collective action.[2] *See Rehberg v. Flower Foods, Inc.*, 2013 U.S. Dist. LEXIS 40337, *5 (W.D.N.C. 2013)(J. Cogburn, Jr.). At the first stage, known as the pre-discovery "notice stage," the court "makes a preliminary determination whether to conditionally certify the class based upon the limited record before the court." *Long v. CPI Sec. Sys.*, 292 F.R.D. 296, 298 (W.D.N.C. 2013); *McLaurin v. Prestage Foods, Inc.,* 271 F.R.D. 465, 469 (E.D.N.C. 2010). "Consistent with the underlying purpose of the FLSA's collective action procedure, this initial inquiry proceeds under a 'fairly lenient standard' and requires only 'minimal evidence.'" *Long*, 292 F.R.D. at 298; *see also Romero v. Mountaire Farms, Inc.,* 796 F.Supp.2d 700, 705 (E.D.N.C. 2011) ("The standard for conditional certification is fairly lenient and requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.").

The second stage, which occurs *after* discovery is complete, is triggered if the defendant moves to decertify the class. *Long*, 292 F.R.D. at 299. Courts generally apply a higher level of scrutiny at the second stage because the parties have developed a more complete factual record through discovery. *Id.*

---

[2] Districts courts in North Carolina routinely conditionally certify FLSA cases. *See, e.g.*, *Long v. CPI Sec. Sys.*, 292 F.R.D. 296 (W.D.N.C. 2013); *Rehberg v. Flower Foods, Inc.*, 2013 U.S. Dist. LEXIS 40337 (W.D.N.C. 2013)(J. Cogburn, Jr.); *Romero v. Mountaire Farms, Inc.*, 796 F. Supp. 2d 700 (E.D.N.C. 2011); *Gaxiola v. Williams Seafood of Arapahoe, Inc.*, 776 F. Supp. 2d 117 (E.D.N.C. 2011); *Harris v. Smithfield Packing Co., Inc.*, 2011 WL 4443024, at *1 (E.D.N.C. Sept. 23, 2011); *Horne v. Smithfield Packing Co., Inc.*, 2011 WL 4443034, at *4 (E.D.N.C. Sept. 23, 2011); *Mitchell v. Smithfield Packing Co., Inc.*, 2011 WL 4442973, at *1 (E.D.N.C. Sept. 23, 2011); *Diaz v. Quality Crab Co., Inc.*, 2011 WL 4498941, at *4 (E.D.N.C. Aug. 12, 2011); Dacar v. Saybolt LP, 2010 WL 5634378, at *1 (E.D.N.C. Aug. 23, 2010); *Garcia v. Frog Island Seafood, Inc.*, 644 F. Supp. 2d 696 (E.D.N.C. 2009); *Martinez-Hernandez v. Butterball, LLC*, 2008 WL 8658452, at *5 (E.D.N.C. Nov. 14, 2008); *Jimenez-Orozco v. Baker Roofing Co.*, 2007 WL 4568972, at *7 (E.D.N.C. Dec. 21, 2007); *De Luna-Guerrero v. North Carolina Grower's Ass'n, Inc.*, 338 F. Supp. 2d 649 (E.D.N.C. 2004).

The threshold issue to conditional certification at the notice stage is whether the plaintiffs have successfully demonstrated a class of "similarly situated" potential plaintiffs. *Long*, 292 F.R.D. at 299. At this stage, the court does not conclude whether a class of similarly situated plaintiffs actually exists; rather it determines whether the plaintiffs have made a modest factual showing of similar situation which justifies sending **notice** to potential plaintiffs of the suit. *Id.* Individuals are "similarly situated" for purposes of the FLSA if they "raise a similar legal issue as to coverage, exemption, or nonpayment of minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions ... ." *De Luna-Guerrero v. North Carolina Grower's Ass'n, Inc.*, 338 F. Supp. 2d 649, 654 (E.D.N.C. 2004) (citations omitted).

But the "situations need not be identical. Differences as to time actually worked, wages actually due and hours involved are, of course, not significant to this determination." *Romero*, 796 F.Supp.2d at 705. Likewise, the requirement of a common policy or plan "is not to say that there can be no differences among class members or that an individualized inquiry may not be necessary in connection with fashioning the specific relief or damages to be awarded to each class member." *Gregory v. Belfor USA Group, Inc.*, 2012 WL 3062696, at *5 (E.D. Va. July 26, 2012).

Additionally, affirmative defenses—individual or collective—raised by defendants are *not* a factor at the notice stage. *E.g. Scott v. Bimbo Bakeries, USA, Inc.,* 2012 WL 645905 (E.D. Pa. Feb. 29, 2012); *Jirak v. Abbott Laboratories, 566* F.Supp.2d 845, 849-50 (N.D. 1ll. 2008); *Westfall v. Kendle International, CPU, LLC,* 2007 WL 486606 at *9 (N.D.W.V. Feb.15, 2007).

### 1.    Evidence Typically Accepted to Meet the "Similarly Situated" Test

In determining what evidence is required to obtain conditional certification, district courts in the Fourth Circuit usually rely on the pleadings and any affidavits or declarations submitted by

the plaintiffs in granting conditional certification. *See Mitchel*, 2012 WL 4005535, at *3 (finding that the plaintiffs had made their "modest factual showing" necessary for conditional certification based on four declarations); *Gregory*, 2012 WL 3062696, at *4 (concluding that the plaintiff had made the requisite showing based on two declarations); *Williams v. XE Servs., LLC*, 2011 U.S. Dist. LEXIS 669, 1-2 (E.D.N.C. 2011)(granting conditional certification based on the pleadings and two declarations).

### 2. __Remedial Purpose of the FLSA__

In light of the FLSA's remedial purpose, courts have repeatedly held the similarly situated requirement of § 216(b) must be interpreted generously to permit workers to collectively pursue their FLSA claims. *See, e.g., Hipp v. Liberty National Ins. Co.*, 252 F.3d 1208, 1214 (11th Cir. 2001) ("We conclude the similarly situated requirement is not particularly stringent[.]"); *Jackson v. New York Tel. Co.*, 163 F.R.D. 429, 431 (S.D.N.Y. 1995) (imposition of a rigorous inquiry would undermine "the importance of early judicial management to assure efficient resolution of similar claims.").

### 3. __The Purposes of § 216(b) Notice__

Court-supervised notice is the preferred method for managing the notification process for several reasons: (1) it avoids a "multiplicity of duplicative suits"; (2) it allows the court to set deadlines to advance the disposition of an action; (3) it furthers the "wisdom and necessity for early judicial intervention" in multi-party actions; (4) it prevents plaintiffs' claims from expiring under the statute of limitations; and (5) it ensures that the plaintiffs receive accurate and timely notice so they can make an informed decision on whether to join the suit. *See Hoffman-La Roche*, 493 U.S. at 170-73; *see also Choimbol v. Fairfield Resorts*, 475 F. Supp. 2d 557, 564 (E.D. Va. 2006) (recognizing that the benefits of collective actions include judicial economy and efficiency by avoiding multiple lawsuits and repetitious evidence).

The United States Supreme Court has held that judicial economy in FLSA cases "depend[s] upon employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *See Rehberg*, 2013 U.S. Dist. LEXIS 40337 at *5 (*quoting Hoffmann-La Roche,* 493 U.S. at 170).

Court facilitated notice is appropriate in this case. In fact, prompt action is necessary because the claims of potential opt-in plaintiffs are being extinguished or diminished due to the running of the FLSA statute of limitations. A claim brought pursuant to the FSLA must be "commenced within two years after the cause of action accrued ... ." 29 U.S.C. § 255(a). Generally, an action is "commenced" on the date the complaint is filed but, in the case of a collective action, if an individual claimant does not immediately file written consent to become a party plaintiff then the plaintiff is an "opt-in plaintiff" and *an action is considered to be "commenced" when the opt-in plaintiff files written consent*. 29 U.S.C. § 256(b). The consequence of the unique statute of limitations contained in the FLSA is self-evident— every day that passes is a day of damages each potential opt-in plaintiff will be unable to recover. Court-facilitated notice will prevent the continued erosion of these claims.

Such collective adjudication in this case will avoid the proliferation of individual lawsuits that could result in disparate rulings and wasting of judicial and party resources. Requiring the Plaintiffs and opt-in Plaintiffs to file separate cases in multiple federal district courts would not be an economic use of resources under the circumstances.

## C.    THIS COURT IS AUTHORIZED TO ISSUE NOTICE TO POTENTIAL OPT-IN PLAINTIFFS AND SHOULD DO SO IMMEDIATELY

Here, Plaintiffs meet the burden for class certification under § 216(b) of the FLSA. In addition to their detailed Complaint, Plaintiffs have submitted detailed declarations outlining the specific off the clock work required by Defendant of its home-based customer service

representatives. (*Exhibits B* and *C*). The declarations establish that Defendant employs uniform and company-wide pay practices with respect to hourly home-based customer service representatives. The declarations demonstrate the preliminary, mid-shift, lunch-break and postliminary time is significant, is required to perform Plaintiffs' job, and is not *de minimis*. The declarations show Defendant ignores the law by refusing to pay its hourly home-based customer service representatives for this time, including overtime. Accordingly, this Court should authorize issuance of the accompanying proposed form of Notice to all of Defendant's hourly home-based customer service representatives who worked for Defendant at any time during the past three years. Plaintiffs' declarations also state that, based on their experience and familiarity with other hourly home-based customer service representatives, that there are many other home-based customer service representatives who were subjected the same practices, worked off-the-clock and overtime for which they were not paid, and would likely participate in a lawsuit to recover unpaid wages. (*Exhibits B* and *C* at ¶ 13).

## D. PLAINTIFFS ARE ENTITLED TO OBTAIN A LIST OF ALL POTENTIAL CLASS MEMBERS

In order to facilitate timely and orderly notice to all potential Class members, Plaintiffs also request that the Court order Defendant to identify all potential opt-in plaintiffs within 14 days of the entry of the Order conditionally certifying the class (i.e., identifying each person by full name, last known address, telephone number, and e-mail and dates and location(s) of employment). *See Rehberg*, 2013 U.S. Dist. LEXIS 40337, at *7.

## E. THE COURT SHOULD GRANT A NINETY (90) DAY OPT-IN PERIOD FOR ADDITIONAL PLAINTIFFS TO JOIN THIS LITIGATION

With respect to the length of the opt-in period, Plaintiffs anticipate significant difficulties in locating potential opt-in plaintiffs, noting that due to the substantial employee turnover rate in Defendant's industry the potential opt-in plaintiffs that are no longer employed by Defendant

may be difficult to reach and may have relocated to a different address. Under the circumstances, Plaintiffs argue the Court should allow for an opt-in period of at least ninety (90) days.

## IV. CONCLUSION

For the reasons explained above, Plaintiffs respectfully request that the Court, pursuant to Section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), enter of an order:

(1)   Conditionally certifying the proposed collective FLSA class;

(2)   Implementing a procedure whereby Court-approved Notice of Plaintiffs' FLSA claim is sent (via US Mail and e-mail) to:

*All current and former hourly home-based customer service representatives who worked for Defendant at any time during the last three years*;[3]

(3)   Requiring Defendant to identify all potential opt-in plaintiffs by providing names, last known addresses, dates of employment, job title, respective warehouse, phone numbers, last four digits of their Social Security numbers, and email addresses in an agreeable format for mailing within 14 days of the entry of the order.

Dated:  December 11, 2014

/s/ Kevin J. Stoops
Kevin J. Stoops *(PHV)*
Jesse L. Young *(PHV)*
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
248-355-0300
kstoops@sommerspc.com
jyoung@sommerspc.com

---

[3] A proposed Notice is attached as *Exhibit A*. In addition to mail and e-mail, Plaintiffs also seek an Order requiring Defendant to hand out a copy of the Notice and opt-in form with every paycheck for one agreed payday.

Timothy J. Becker *(Pending Pro Hac Admission)*
MN Bar No. 256663
Jacob R. Rusch *(Pending Pro Hac Admission)*
MN Bar No. 391892
JOHNSON BECKER, PLLC
33 South Sixth Street, Suite 4530
Minneapolis, Minnesota 55402
(612) 436-1800
tbecker@johnsonbecker.com
jrusch@johnsonbecker.com

*Trial Counsel for Plaintiff*


Edward B. Davis, NC Bar No. 27546
BELL DAVIS PITT, P.A.
227 W. Trade Street, Suite 2160
Charlotte, North Carolina 28202
ward.davis@belldavispitt.com
(704) 227-0129

*Local Counsel for Plaintiff*


## CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2014, I served the foregoing paper upon Cloud 10

Corp. via Certified Mail, Return Receipt Requested.

/s/*Kevin J. Stoops*
Kevin J. Stoops *(Admitted Pro hac vice)*
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
248-355-0300
kstoops@sommerspc.com

16